FILED

2009 Oct-07  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOTTIE D. IKE,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | **2:08-cv-1193-JHH** |
| **JEFFERSON STATE** | ) | |
| **COMMUNITY COLLEGE,** | | |
| | ) | |
| **DEFENDANT.** | | |

## MEMORANDUM OF DECISION

The court has before it the June 15, 2009 motion (doc. #19) of defendant Jefferson State Community College ("Jeff State") for summary judgment.  Pursuant to the court's June 16, 2009 order (doc. #22), the motion was deemed submitted, without oral argument, on July 14, 2009.  Having considered the briefs and evidentiary submissions, the court finds that defendant's motion for summary judgment is due to be granted for the reasons outlined below.

### I. Procedural History

Plaintiff Dottie D. Ike commenced this action on July 3, 2009 by filing a complaint (doc. #1) alleging discrimination on the basis of her race and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

("ADEA"), respectively.  The complaint also asserted a claim of race discrimination

against Jeff State under 42 U.S.C. § 1981, but the court dismissed (see doc. #17) this

claim because section 1981 does not provide a claim against state actors.  Butts v.

County of Volusia, 222 F.3d 891, 892-94 (11th Cir. 2000).

Defendant's June 15, 2009 motion (doc. #19) for summary judgment asserts

that no genuine issue of material fact exists and that Jeff State is entitled to judgment

as a matter of law as to all claims asserted against it.  Both parties have filed briefs

and submitted evidence in support of their respective positions concerning the

pending motion for summary judgment.  On June 15, 2009, the defendant submitted

evidence[1] (doc. #21) in support of its own motion for summary judgment and filed a

supporting brief (doc.#20).  Plaintiff submitted a brief (doc. #23) and evidence[2] (doc.

#24) in opposition to defendant's motion for summary judgment on July 7, 2009.  On

July 14, 2009, defendant filed a brief in reply (doc. #25) to plaintiff's opposition.

---

[1] The defendant submitted the following evidence: deposition of Dottie Ike, including exhibits; declaration of Joe Morris; and declaration of Mike Hobbs and exhibits.

[2] The plaintiff submitted the following evidence: deposition of Dottie Ike; deposition of Judy M. Merritt; deposition of Phillip Guin; affidavit of Dottie Ike; affidavit of Margaret A. Mathis; EEOC Notice of Dismissal and Right to Sue; 1/2/07 letter from Judy Merritt and Michael Hobbs to Keith Brown; 1/22/07 letter from Ruby Russell to Dottie Ike; "Jefferson State Community College at a Glance"; "Giving to the College" from the Jeff State website; excerpts from 2007 fiscal year education trust fund budget; and "CAS Agency Codes."

## II.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  After the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  <u>See</u> <u>id.</u> at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

4

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[3]

Dottie Ike is a sixty-two (62) year old African American female. (Ike Dep. at 7, 9.) She served as a part-time English instructor at Jeff State from the fall of 2004 until the spring of 2009. (Id. at 26-27.) She was also employed by Jeff State as a part-time receptionist on Saturdays from October 2005 until April 2009. (Id. at 30-31, 33-34.) Ike is no longer employed by Jeff State because of restrictions imposed when she accepted early retirement benefits from Social Security. (Id. at 24-35.)

Jeff State is a two-year community college governed by the Alabama Department of Post-Secondary Education, the Chancellor of that Department, and the Alabama Board of Education. (Morris Decl. ¶ 2; see also Ala. Act No. 82-486.) Jeff State depends on the treasury of the state of Alabama for its funding. (Morris Decl. ¶ 3.) For instance, in the fiscal year 2009, fifty-one percent (51%) of the budget came from an allocation of funds directly from the state legislature. (Id.) Jeff States does, however, engage in its own fundraising efforts, and it is not listed as a state agency in the accounts list of the state of Alabama. (See Pl. Exs. 10 & 12.)

---

[3] These are the facts for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted). Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff. See Fitzpatrick, 2 F.3d at 1115.

*A.  The Position at Issue*

On November 20, 2006, Ike applied for an academic advisor position. (<u>Id.</u> at 78-79. 81-84.)  Seventy (70) other individuals also applied for the position.  (Hobbs Decl. ¶ 9.)  Of those applicants, thirty-three (33) were over the age of forty.[4]  (<u>Id.</u>) The racial composition of the applicant pool was as follows: thirty-four (34) Caucasians, thirty-three (33) African Americans, two (2) Asians, one (1) Hispanic, and one (1) of multi-racial background.  (<u>Id.</u>)

On January 2, 2007, the President of Jeff State, Judy Merritt, and the search committee, consisting of Mike Hobbs, Lillian Owens, Rodney Thompson and Cindy Bobo,[5] decided to apply additional criteria, beyond the minimal qualifications listed in the job posting, to screen application for interviews.  (Ike Dep. at 55; Hobbs Decl. ¶ 5-6; Ex. B to Hobbs Decl.)   Merritt and Hobbs drafted a memorandum regarding the addition, stating that the additional criteria were applied "[b]ecause there were more than fifty applicants who met the minimum requirements for the . . . position, the search committee in conjunction with the President applied the . . . additional criteria to further screen the applicants."  (Ex. B. to Hobbs Decl.)   Although Ike

---

[4]  The ages of three of the applicants are unknown.  (Hobbs Decl. ¶ 9.)

[5]  Mike Hobb is Caucasian and under forty; Lillian Owens is African American and over forty; Rodney Thompson is African American and under forty and Cindy Bobo is Caucasian and under forty.  Judy Merritt is Caucasian and over forty.  (Hobbs Decl. ¶ 5.)

disputes that the addition was made "because of the large number of applicants," (see doc. #23 at 3), she does not dispute that the practice of applying additional criteria before the interview stage is followed by Jeff State where there are more than fifty applicants. (See id.; Hobbs Decl. ¶ 7.)

The additional criteria were two: (1) work experience in higher education and (2) a master's degree in education or counseling. (Ex. 10 to Ike Dep.; Hobbs Decl. ¶ 5; Ex. B to Hobbs Decl.) With the addition of these two qualifications, the applicant pool was narrowed to twenty-two (22) individuals, who were each selected to interview for the position.[6] (Hobbs Decl. ¶ 10; Ex. C to Hobbs Decl.) Ike was not included in those twenty-two individuals because she does not possess a master's degree in either education or counseling. (Ike Dep. at 111.) Of those eliminated by the additional criteria, fifteen (15) were over forty and twelve (12) were under forty[7] and fourteen (14) were African American and fifteen (15) were either Caucasian, Asian, Hispanic or of mixed racial background. (Hobbs Decl. ¶ 11; Ex. C to Hobbs Decl.) Of those selected for an interview, nine (9) were over forty and twelve (12)

---

[6] Of the seventy-one (71) applicants, twenty (20) had incomplete applications or did not meet the minimum qualifications from the job posting and twenty-nine (29) were eliminated after the additional criteria were applied. (Hobbs Decl. ¶ 10.)

[7] The ages of three of the applicants are unknown. (Hobbs Decl. ¶ 9.)

were under forty and eight (8) were African American and fourteen (14) were Caucasian.  (Hobbs Decl. ¶ 12; Ex. C to Hobbs Decl.)

Following the interviews by the search committee, three individuals were recommended to the President for the position: Misty Dixon, Philip Guinn, and Katara Smith.  (Ex. D to Hobbs  Decl.)  Philip Guinn, a twenty-six (26) year old Caucasian was selected for the position by Judy Merritt, the President of Jeff State, after she interviewed the three individuals recommended by the search committee. (Hobbs Decl. ¶ 17.)  At the time he received the position, Guinn was working at Jeff State as an academic advisor in a one-year temporary position and had also worked at Jeff State in a work study program while a student.  (Id.)  Guinn possessed a master's degree in educational leadership with a focus on higher education from the University at Alabama at Birmingham.  (Id.)  The President's written explanation of her reason for selecting Guinn for the position stated that he had an "outstanding interview" and "good ideas for improving the operations of this program."  (Ex. C. to Hobbs Decl.)

### B.  Ike's Allegations of Discrimination

9

Ike contends that the denial of an interview for the academic advisor position was discriminatory.[8]  (Ike Dep. at 89-90, 95.)  She believes that Cindy Bobo, who is in charge of Academic Advising for Jeff State, had the search committee add the two additional criteria to the requirements to specifically exclude Ike from the pool of candidates.  (Id. at 95, 117-19, 177-80; Merritt Dep. at 51.)  Although Ike never had any problems getting along with Bobo, Ike testified that Bobo told Peggy Mathis, an academic advisor, that "Dottie applied for every full-time position Jeff State has.  I'll make sure she doesn't get to the interview process."  (Id. at 95, 109; see Mathis Aff.

---

[8] Although Ike's brief argues that Ike also complains that the fact that she was not selected for the academic advisor position was also discriminatory (see doc. #23 at 3), the evidence before the court does not support this argument.  Ike testified as follows:

- "My not being selected for the position was never what I considered discriminatory."  (Ike Dep. at 89-90.)
- "My contention is that I wasn't even allowed . . . [to be] interviewed . . . .  Simply because I didn't get the job didn't tell me I was discriminated against.  (Id. at 94.)
- [T]he most important thing was what my complaint is, that I never got a chance to interview for the position.  The way they [the EEOC] phrased it was that I was suing because I didn't get the position. . . . And then when I talked on the telephone to this person's boss I said, you know, we've got this thing all wrong here.  And that is when it [her EEOC charge] was revised.  (Id. at 144-45.)
- Q:    So just so I'm clear: You've told us that you were discriminatorily denied the interview in conjunction with the November 9, 2006, posting on the basis of race and age, right?
  A:    Yes sir.
  Q:    But you weren't discriminated against in any other way on any other occasion, correct?
  A:    Well, not that I know of by Cindy Bobo.  No.
  Q:    Okay.  Or by anybody else?
  A:    At Jeff State.
  Q:    Is that a no?
  A:    Yes sir.
  (Id. at 167.)

10

¶ 4.)  Bobo, however, never said anything to demonstrate a bias against African Americans or older people.  (Ike Dep. at 119-20.)

Additionally, Ike believes that she was denied an interview for the academic advisor position based on her age because all of the receptionists, like herself, were over fifty.  (Id. at 100, 102.)  Ike testified that Dr. Merritt allegedly stated that she "wanted older women to work the receptionist position" and that she was "going to get some older women who know how to dress."  (Id.)  Ike interpreted this comment to mean that Jeff State would not promote older receptionists to advisor positions.[9] (Id. at 105-06, 121.)  She also thought that it constituted "reverse discrimination" against younger people.  (Id. at 120.)

### C.  EEOC Charge

On July 20, 2007 Ike filed a charge of discrimination with the Equal Employment Opportunity Commission alleging age, race and gender discrimination.  (Compl. ¶ 3; Ex. A to Compl.)  On February 22, 2008, Ike filed an amended charge to clarify her complaint: she alleged only that the failure to interview for the position, not the failure to be selected for the position, was discriminatory.  (Ike Dep. at 144-

---

[9] Ike testified, however, that Mathis, who is over fifty, was promoted from a receptionist position to an advisor position.  (Ike Dep. at 102-03.)

45; Ex. B. to Compl.)  After an investigation by the EEOC, it issued Ike a dismissal and notice of right to sue.  (Pl. Ex. 6.)  This lawsuit ensued.

## IV.  Analysis

Plaintiff's complaint contains the following claims: (1) age discrimination in violation of the ADEA and (2) race discrimination in violation of Title VII. Defendant's motion for summary judgment asserts that plaintiff has failed to establish a prima face case for any of plaintiff's claims against defendant.  Defendant also contends that plaintiff's age discrimination fails because Jeff State is entitled to sovereign immunity as to that claim under the Eleventh Amendment.  The court will address plaintiff's claims separately.

### A.  Discrimination Claims in General

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).  A plaintiff's ability to proceed through the use of

12

circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  Burns v. Gadsden State Cmty. College, 908 F.2d 1512 (11th Cir. 1990).  Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition); see also Bass v. Board of County Comm'rs, Orange County, Florida, 242 F.3d 996, 1010 (11th Cir. 2001) (discussing meaning of "direct evidence" in the context of a Title VII race discrimination claim; "direct evidence" refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination.").

Here, it is undisputed that plaintiff has presented only circumstantial evidence of discrimination.  "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S.

13

792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527.  Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  See id. at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  See, e.g., Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Bd. of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[10]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

---

[10] See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[11]  See Rojas, 285 F.3d at 1342; Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[12]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 229 F.3d at 1024-25.  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  See Combs, 106 F.3d at 1528.

---

[11] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

[12] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[13] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993);

---

[13] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law.  See Chapman, 229 F.3d at 1025, n.11.

Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

## B.  Age Discrimination

Jeff State argues that Ike's claim of age discrimination is due to be dismissed as a matter of law for two reasons.  First, Jeff State contends that the doctrine of sovereign immunity bars her claim under the ADEA.  (Doc. #20 at 12-15.)  In the alternative, Jeff State argues that Ike has failed to establish a prima facie case of age discrimination and failed to rebut its legitimate, nondiscriminatory reason for the decisions at issue.  The court agrees with Jeff State as to both arguments.

### 1.  Plaintiff's Age Discrimination Claim is Barred by Sovereign Immunity.

Generally, the Eleventh Amendment is a complete bar to lawsuits brought against a state or state agency by individuals in federal court.  Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984) (Eleventh Amendment bar to suit against state and state agencies applies "regardless of the nature of the relief sought."); see Tuveson v. Florida Governor's Council on Indian Affairs, Inc., 734

17

F.2d 730, 732 (11th Cir. 1984).  This immunity extends to state agencies, but does not extend to independent entities, such as counties or municipalities.  See Tuveson, 734 F.2d at 732.   "Whether [the College] is an arm of the state protected by the Eleventh Amendment 'turns on its function and character as determined by state law.'" Fouche v. Jekyll Island-State Park Auth., 713 F.2d 1518, 1520 (11th Cir. 1983) (quoting Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. 1981)).  The Eleventh Circuit has instructed courts to consider the following four factors to determine whether an entity is an arm of the state: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. Miccosukee Tribe of Indians of Fl. v. Florida State Athletic Comm'n, 226 F.3d 1226, 1231 (11th Cir.  2000) (citations omitted).  After examination of these factors, the court concludes that Jeff State is an arm of the state, thereby entitling it to immunity under the Eleventh Amendment.

a.  Characterization under Alabama law

Under Article 1, section 14 of the Alabama Constitution, "the State and its agencies have absolute immunity from suit in any court."  See Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989).  The Supreme Court of Alabama has held that "'[t]his immunity extends to the state's institutions of higher learning.'"  Williams v. John C.

Calhoun Cmty. Coll., 646 So.2d 1, 2 (Ala. 1994) (quoting Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala.1983)).   Every reported decision found by the court involving community colleges in Alabama has concluded that state law defines community colleges as arms of the state.   See, e.g., Morris v. Wallace Cmty. Coll. - Selma, 125 F. Supp.2d 1315, 1335-36 (S.D. Ala. 2001); Ex parte Craft, 727 So.2d 55, 58 (Ala. 1999); Lafleur v. Wallace State Cmty. Coll., 955 F.Supp. 1406, 1421-22 (M.D. Ala. 1996); Williams v. John C. Calhoun Cmty Coll., 646 So.2d 1, 2 (Ala. 1994); Shoals Cmty. Coll. v. Colagross, 674 So.2d 1311, 1313-14 (Ala.Civ.App. 1995), cert. denied, 674 So.2d 1315 (Ala. 1996).   In accord with these decisions, the court concludes that Alabama's state law sovereign immunity extends to community colleges such as Jeff State.

### b.  Degree of Control

Second, Jeff State is heavily regulated by the State Department of Post-Secondary Education, the Chancellor of that department, and the state Board of Education.   (See Morris Decl. ¶ 2.) Unlike the cases cited by plaintiff where the entities were independent from the state, Jeff State is directly under the control of the Department of Post-secondary Education and the state Board of Education.  See Ala. Code § 16-60-110 et. seq.  Moreover, the Alabama Supreme Court recently held that the state Board of Education, "in its governance of postsecondary institutions," is a

state agency, as defined in the Alabama Administrative Procedures Act.  Byrne v.

Galliher, __ So.3d __, 2009 WL 1496831 (Ala. May 29, 2009).

c.  Funding and Judgments

As far as funding, it is undisputed that Jeff State depends on the state of

Alabama for its funding. (Morris Decl. ¶ 3.)  In fact, in the fiscal year 2009, fifty-one

percent (51%) of the budget came from an allocation of funds directly from the state

legislature.  (Id.)  Additionally, Alabama law restricts the ability of Jeff State to

borrow money.  See Ala Code § 16-60-113. That Jeff State charges tuition from its

students and solicits donations does not preclude it from being considered an arm of

the state.  It is undisputed that four-year universities in Alabama are arms of the state,

and they charge tuition and raise funds from donors.  Finally, any monetary relief

awarded against Jeff State would come from the state treasury.  Plaintiff has not

provided any evidence to the court to refute this contention.

In summary, after consideration of the above factors, the court concludes that

Jeff State is an arm of the state.  As such, it enjoys the same immunity as the State

under the Eleventh Amendment.  Plaintiff's ADEA claim, therefore, is barred.

2.  In the Alternative, Plaintiff Failed to Establish
that She was Discriminated Against Because of her Age.

20

Although both parties analyze the discrimination claim as failure to promote case, as discussed in footnote 7, <u>supra</u>, Ike unequivocally testified that her claim of discrimination revolves solely around the fact that she was not selected to interview for the academic advisor position; she does not contend that her failure to receive the position was discriminatory.  (<u>See</u> Ike Dep. at 89-90, 94, 144-45, 167.)  As such, it is more appropriately analyzed as a disparate treatment case.[14]

The ADEA prohibits an employer from discriminating against an employee over 40 years old on the basis of age. <u>See</u> 29 U.S.C. §§ 623(a), 631(a). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 141 (2000) (quotations, citations, and alterations omitted). As discussed in Section IV.A., absent direct evidence of an employer's discriminatory motive, a plaintiff may establish her case through circumstantial evidence, using the burden-shifting framework established by the Supreme Court in

---

[14] Even if the court is incorrect in this analysis, plaintiff failed to establish that she was not promoted to the academic advisor position because of her age.  Assuming that Ike established a prima facie case of age discrimination, she failed to establish that the legitimate, nondiscriminatory reason articulated by Jeff State was motivated by discriminatory animus.  <u>See</u> <u>infra</u> at 23-25.

McDonnell Douglas Corp. See Chapman, 229 F.3d at 1024.  Under this framework, the plaintiff may establish a prima facie case of "an ADEA violation . . .  by showing that she (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) that similarly situated younger employees were treated more favorably.  Id.

Ike clearly met the first and third requirement of the McDonnell Douglas analysis.  She was over the age of forty at the time she was denied an interview.  She was also qualified to perform the job of academic advisor as she met all the initial requirements posted for the position.  That additional requirements were added to narrow the applicant pool does not effect this analysis.

The second requirement, whether Ike was subjected to an adverse employment action, is a tougher determination.  In the context of discrimination claims,[15] an adverse employment action is "a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d

_____

[15] The court notes that the Eleventh Circuit has consistently rejected the argument that the decision in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) applies to claims of disparate treatment discrimination.  The "materially adverse" standard in Burlington Northern was explicitly limited to claims brought under the anti-retaliation provision of Title VII, and the Supreme Court was careful to note that a different standard applied to substantive claims of discrimination. See id. at 67 (concluding that "Title VII's substantive provision and its anti-retaliation provision are not coterminous," and that the anti-retaliation provision forbids conduct not prohibited by the anti-discrimination provision). Therefore, the Eleventh Circuit continues to apply the standard articulated in Davis to claims of substantive discrimination under Title VII.

1232, 1239 (11th Cir. 2001) (emphasis in original).  To constitute a violation, "the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way."  Id.  To determine whether an action constitutes a violation, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  Id.

Here, the alleged adverse employment action is the failure to interview Ike for the position of academic advisor.  While the failure to promote is generally deemed an adverse action, the Eleventh Circuit has never specifically held that being denied an interview is in itself an adverse employment action.  In fact, the court cannot find any Circuit that has explicitly held such.  However, the court will assume, without deciding, that it is because plaintiff failed to establish the fourth prong of her prima facie case.

Ike did not satisfy the fourth requirement that similarly situated, younger applicants were treated more favorably.  Ike was treated no differently than younger applicants.  In fact, Ike admitted in her deposition that "all of us [applicants] were discriminated against" by the addition of the requirement of a master's degree in counseling or education.  (Ike Dep. at 159-60).  The record shows that of the twenty-nine (29) applicants not granted an interview because of the two additional criteria,

23

twelve (12) were under the age of forty.  (Hobbs Decl. ¶ 11; Ex. C to Hobbs Decl.)

Therefore, Ike did not establish a prima facie case of age discrimination.

Even if Ike did establish a prima facie case of age discrimination, she failed to

rebut the legitimate, nondiscriminatory reason offered by Jeff State for not

interviewing her for the position – she did not meet the additional criteria of a mater's

degree in education or counseling.[16]  (See Hobbs Decl. ¶¶ 5-6; Ike Dep. at 111.)  As

evidence of pretext, Ike argues that Cindy Bobo blocked plaintiff from being

interviewed by persuading the search committee and Dr. Merritt to adopt additional

criteria that Bobo knew would eliminate Ike.  (See doc. #23 at 14-15.)  She points to

two statements allegedly made by Bobo to support this theory: (1) that "she would not

permit Ms. Dottie Ike to be interviewed for any position that she applied for with

Jefferson State Community College, and also that Dottie would 'never get on full-

time," (Mathis Aff.¶ 3); and (2) that "Dottie applies for every full-time position that

comes available, but I'll always make sure she doesn't get to the interview process."

(Id. ¶ 4.)

---

[16] It is undisputed that Ike met the additional criteria of experience in higher education.

Even if Ike's theory were to be believed[17] - that Cindy Bobo was somehow "out to get" Ike - the problem for Ike is that these statements do not establish that Ike was discriminated against because of her age. All they establish was that Bobo did not like Ike and did not want her to be promoted. The statements do not contain any indicia of illegal discrimination on the basis of age. In fact, Ike admitted that Bobo never made any comments that demonstrated age bias. (Ike Dep. at 104, 120.) Evidence of personal animus, without evidence of discrimination, is insufficient. See Hawkis v. Ceco Corp., 883 F.2d 977, 986 (11th Cir. 1989) ("dislike alone is not evidence of [ ] discrimination."). Moreover, the additional criteria that Ike contends were used to eliminate her from the opportunity to interview because of her age, did not eliminate all older individuals from interviewing for the position. Nine (9) of the twenty-two (22) applicants selected to interview after the additional criteria were applied were over the age of forty. (Hobbs Decl. ¶ 12.)

Ike also contends that Jeff State's reason is "unworthy of credence" because (1) Jeff State told her that she was qualified for the position, but now contends, after the fact, that she was not; and (2) favoritism played a part in the selection of Guinn

---

[17] It is important to note that there is no evidence that the search committee had reviewed the applications at the time they applied the additional criteria to pare down the applicant pool. The only evidence in this regard is that the committee knew the number of applications, not who had applied or the qualifications of each applicant.

for the position.  Both arguments fail.  First, Jeff State does not argue that Ike was not qualified for the position, and there is no evidence in the record that anyone at Jeff State ever told Ike she was not qualified for the position.  Instead, Jeff State asserts that it applied additional criteria to the applicant pool as a way of paring down the applications to a manageable size of candidates to interview.  Second, plaintiff has not presented any evidence that favoritism played any role in the selection of Guinn. That Guinn performed outside work for Dr. Merritt and her husband does not establish that the articulated reason for denying Ike an interview was false or that it was motivated by illegal animus.  See  Crawford v. Carrol, 529 F.3d 961, 971-74 (11th Cir. 2008).

In summary, viewing the facts in the light most favorable to Ike, a jury could not reasonably find that the decision not to interview Ike for the position of academic advisor was motivated by discriminatory animus arising from her age.  See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (explaining that to show discriminatory animus, a mere scintilla of evidence will not suffice to defeat summary judgment).  Jeff State, therefore, is entitled to summary judgment as to Ike's claim of age discrimination.

### C.  Race Discrimination

Ike's claim of race discrimination fails for reasons similar to those explained in the above analysis.  First, Ike failed to establish a prima facie case of race discrimination because she did not satisfy the fourth requirement that similarly situated, Caucasian applicants were treated more favorably.  Ike was treated no differently than all the other applicants, and admitted such during her deposition, stating that "all of us [applicants] were discriminated against" by the addition of the requirement of a master's degree in counseling or education.  (Ike Dep. at 159-60).  Additionally, the record shows that of the twenty-nine (29) applicants not granted an interview because of the two additional criteria, twelve (12) were Caucasian, one (1) was Asian, one (1) was Hispanic, and one (1) was of mixed racial background.  (Hobbs Decl. ¶ 11; Ex. C to Hobbs Decl.)  Therefore, Ike did not establish a prima facie case of race discrimination.

Second, even if Ike did establish a prima facie case of race discrimination, she failed to rebut the legitimate, nondiscriminatory reason offered by Jeff State for not interviewing her for the position.  Unlike her claim of age discrimination, Ike has no evidence to even make an argument that race played any role in the decision make by the search committee.  Although her brief uses the term "race discrimination," she

does not make any real argument in support of that claim.[18]   In fact, Ike has no evidence of race discrimination at all, other than the fact that the person ultimately hired for the position was Caucasian.  Ike admitted in her deposition that neither Dr. Merritt, Bobo or Hobbs had any bias against African-Americans, (Ike Dep. at 119-21), and the two other members of the search committee were African-American.[19] (Hobbs Decl. ¶¶ 5-6.)

Ike's claim of race discrimination simply falls short.  Viewing the facts in the light most favorable to Ike, a jury could not reasonably find that the decision not to interview Ike for the position of academic advisor was motivated by discriminatory animus arising from her race.  See Walker, 911 F.2d at 1577.  Jeff State, therefore, is entitled to summary judgment as to Ike's claim of race discrimination.

## VI.  Conclusion

In summary, the court finds that no material issues of fact remain and that defendant Jefferson State Community College is entitled to judgment as a matter of law as to all claims asserted by plaintiff.

---

[18] Instead, her argument focuses on her evidence of age discrimination.

[19] Like her age claim, the court treats Ike's "failure to interview" claim as a run-of-the-mill disparate treatment claim.  However, if this analysis is incorrect, and the court should treat her claim as a failure to promote, plaintiff failed to establish that she was not promoted to the academic advisor position because of her race.  Assuming that Ike established a prima facie case of race discrimination, she failed to establish that the legitimate, nondiscriminatory reason articulated by Jeff State was motivated by discriminatory racial animus.  See infra at 26-27.

A separate order will be entered.

**DONE** this the ___7th___ day of October, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE